**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Karen Appeldorn, surviving widow,

        Plaintiff,                      **MEMORANDUM OPINION**
                                                   **AND ORDER**
    v.                                  Civil No. 11-400 ADM/SER

Minnesota Valley Co-Op and
Life Insurance Company of North America,
a CIGNA Company,

        Defendants.

_____

Rodney C. Hanson, Esq., Anderson, Larson, Hanson & Saunders, PLLP, Willmar, MN on behalf of Plaintiff.

Michael T. Berger, Esq., Hinshaw & Culbertson LLP, Minneapolis, MN on behalf of Defendant Life Insurance Company of North America, a CIGNA Company.

Stephen S. Torvik, Esq., Nelson Oyen Torvik PLLP, Montevideo, MN on behalf of Defendant Minnesota Valley Co-Op.

_____

## I. INTRODUCTION

On August 30, 2011, the undersigned United States District Judge heard oral argument on Defendant Life Insurance Company of North America, a CIGNA Company's ("LINA") Motion to Dismiss [Docket No. 14] (the "Motion"). Defendant Minnesota Valley Co-Op (LINA and Minesota Valley Co-Op are collectively "Defendants") joins the Motion [Docket No. 21]. Plaintiff Karen Appeldorn opposes the Motion. Appeldorn asserts claims against Defendants for violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as well as Minnesota state law claims. For the reasons set forth below, the Motion is granted.

## II. BACKGROUND[1]

Plaintiff Karen Appeldorn's husband, Eugene Appeldorn, was a director of Minnesota Valley Co-Op. Am. Compl. [Docket No. 20] ¶¶ 2-3. On February 12, 2008, Eugene Appeldorn traveled on a "corporate jet" from Marshall, Minnesota, to Bismarck, North Dakota. Id. ¶ 8. During the flight, he complained of severe ear and head pain, and upon arrival in Bismarck, North Dakota, sought immediate medical attention. Id. ¶¶ 9-10. He was diagnosed with a middle ear infection, went to sleep in his hotel room, and was found dead the following morning. Id. ¶¶ 10-11. His cause of death was bacterial meningitis, caused when the change in the airplane's cabin pressure forced a septic embolus (i.e. an infected mass) related to his ear infection from his middle ear into the meningeal space (the covering of his brain and spinal cord). See id. ¶¶ 12-13; Rodney C. Hanson Aff. [Docket No. 23] Ex. A ("Report of Dr. Carter").[2]

Eugene Appeldorn was insured under a Business Travel Accident Insurance Plan (the "Policy") issued by LINA. Am. Compl. ¶ 7. Generally speaking, the Policy covers accidents during the course of employment. The Policy excludes bacterial infections, except those caused by "accidental cuts or wounds." Michael T. Berger Aff. Ex. B ("Policy") at LINA 00034. The Policy names Karen Appeldorn as beneficiary. Am. Compl. ¶ 14. She intended to file a claim,

---

[1] In considering Defendants' Motion to Dismiss, the Court considers the facts alleged in Plaintiff's Complaint to be true. See Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

[2] Ordinarily, when considering a motion to dismiss, courts must ignore materials outside of the pleadings. Porous Medica Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). Here, because the Complaint references the "independent medical analysis by two physicians," Am. Compl. ¶ 13, Dr. Carter's report is "necessarily embraced by the pleadings." See id. (noting that courts may consider materials that are matters of public record or "necessarily embraced by the pleadings") (citations omitted).

and in May 2010, sent Minnesta Valley Co-Op a request for claim forms but received no response.  Id.  In July 2010, she sent Minnesota Valley Co-Op and LINA each a request for claim forms.  Id. ¶ 15.  Minnesota Valley Co-Op did not respond, and her mail to LINA was returned.  Id.

On February 16, 2011, Karen Appeldorn initiated this lawsuit.  The same facts had previously formed the basis of a prior lawsuit in federal court in North Dakota.  See Appeldorn v. Hartford Life & Accident Ins. Co., No. 1:09-cv-069, 2010 WL 3475915 (D. N.D. Sept. 2, 2010).  In that case, summary judgment was granted to a different insurer, under a different policy, because the U.S. District Court for the District of North Dakota held that Eugene Appeldorn's death was not an "accident" under the terms of the policy.  Id. at *4-5 (D. N.D. Sept. 2, 2010).

In the present lawsuit, Karen Appeldorn asserts state law claims for breach of contract and breach of the covenant of good faith and fair dealing, and federal claims under ERISA for denial of benefits and failure to provide documentation.  Defendants now move to dismiss.  Defendants argue that Karen Appeldorn's state law claims are preempted, she cannot state a claim under ERISA because she has not exhausted her administrative remedies, she was not entitled to benefits under ERISA, and Defendants are not the proper entities for a failure to disclose claim.

### III.  DISCUSSION

#### A.   Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most

favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B.      State Law Claims**

Defendants aver, and at oral argument Appeldorn conceded, that her state law claims for breach of contract and breach of the covenant of good faith and fair dealing are preempted by ERISA. See Kuhl v. Lincoln Nat'l Heatlh Plan of Kansas City, Inc., 999 F.3d 298, 302-04 (8th Cir. 1993) (holding that ERISA preempts state law that "relates to" an ERISA plan and dismissing state common law claims). Therefore, those claims are dismissed.

**C.     Refusal to supply requested information**

Under ERISA, an "administrator" who fails to provide certain information is liable to a plan participant or beneficiary for that failure. 29 U.S.C. § 1132(c)(1)(B). The "administrator" is "the person specifically so designated by the terms" of an ERISA plan or the plan sponsor. 29 U.S.C. § 1002(16)(A).

Here, the Summary Plan Description (the "SPD") designates the National Rural Electric Cooperative Association as the administrator. Berger Aff. Ex. C ("SPD") at 18. Therefore, while Minnesota Valley Co-Op's failure to respond to a recent widow's information requests or to provide her a proper address for LINA is lamentable, neither Minnesota Valley Co-Op nor LINA are liable for failure to provide information that they had no duty to provide. This cause of action must be dismissed.

**D.     Denial of Benefits**

Karen Appeldorn alleges that she is entitled to death benefits under the Policy. LINA and Minnesota Valley Co-Op argue that Eugene Appeldorn's death was not covered by the Policy and regardless that Karen Appeldorn is required to exhaust her administrative remedies. Because Eugene Appeldorn's death is not covered, the exhaustion arguments need not be addressed here.

Under ERISA, a beneficiary of a plan may bring a civil action to recover benefits due. 29 U.S.C. § 1132(a)(1)(B). Construction of an ERISA plan is akin to contract interpretation. Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir. 1991) (quotation omitted). In construing plan terms, courts may look to "federal common law." King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998 (8th Cir. 2005) (citing Brewer v. Lincoln Nat'l Life Ins.

Co., 921 F.2d 150, 153-54 (8th Cir. 1993)).

Here, the Policy excludes bacterial infections except those caused by "an accidental cut or wound." Policy at LINA 00034. Therefore, whether Eugene Appeldorn's bacterial meningitis is covered by the Policy turns on whether it was caused by an accidental cut or wound. To begin, the airplane pilot's intention was undoubtedly not to cause Eugene Appeldorn's bacterial meningitis as the aircraft cabin pressurized, but the pressurization itself was not an accident–it was an ordinary and necessary condition of operating the aircraft. Ordinary and necessary operation of an aircraft cannot be an accident. See, e.g., SPD at 23 (defining an "accident" as something caused by "an event that is sudden and *unforeseen*") (emphasis added). Therefore, the aggravation of Eugene Appeldorn's existing illness by the ordinary demands of air travel was not an accidental wound.

Furthermore, the phrase "accidental cut or wound" connotes some external violence causing some external injury. See Webster's New Collegiate Dictionary (1977) at 281 (defining a "cut" as "an opening made with an edged instrument"), 1353 (defining "wound" as "an injury to the body (as from violence, accident, or surgery) that involves laceration or breaking of a membrane . . . "). Here, the external force–changing of cabin pressure–was not violent and caused no external injury. The bacterial meningitis was not a cut or a wound, much less an "accidental cut or wound."

This result is in accord with other courts construing similar terms. In Plaintiff's previous case, Appeldorn v. Hartford Life & Accident Ins. Co., the court considered a different accidental death and dismemberment insurance policy that excluded from coverage "sickness of disease, except a pus-forming infection which occurs through an accidental wound." 2011 WL 3475915,

at *4.  Under these same facts, the court concluded that Eugene Appeldorn's death did not result from an accidental wound and granted summary judgment in favor of the insurance company. See id. at *4-5.

Finally, even if the Policy could be construed so that the pushing of a septic embolus from the middle ear inward due to changing air pressure could be an "accidental cut or wound" no benefits would be owed.  Under the Policy, LINA is required to pay benefits when a loss is caused by an accident "directly and from no other causes."  Policy at LINA 00032.  Even if the spread of the infection was an "accidental cut or wound," the pre-existing ear infection was a contributing cause, and no benefits are owed.  See Kerns v. Aetna Life Ins. Co., 291 F. 283, 291-92 (8th Cir. 1923) (denying benefits under insurance policy that covered injuries "resulting directly and independently of all other causes" from accidents where deceased's fall on ice dislodged metal embedded in his esophagus because presence of metal was a "pre-existing disease or bodily infirmity" that was a contributing cause of his death).

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. LINA's Motion to Dismiss [Docket No. 14] is **GRANTED**; and
2. All claims asserted in Amended Complaint [Docket No. 20] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 30, 2011.